UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT L. DYKES,

          Plaintiff,

Case No. 2:22-cv-109

v.

Honorable Robert J. Jonker

UNKNOWN BECKS et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in

Munising, Alger County, Michigan. Plaintiff sues LMF Corrections Officers Unknown Becks and Unknown Brager, and LMF Warden Sarah Schroeder.

Plaintiff alleges that Defendant Becks wrote a false misconduct against Plaintiff for using a JPay kiosk without authorization. On December 9, 2021, Plaintiff was found not guilty of the misconduct. (Misconduct Hr'g Report, ECF No. 1-3, PageID.19.) Plaintiff then filed a complaint against Becks with the MDOC Internal Affairs Department (ECF No. 1-4, PageID.21–23), and another complaint with the "Civil Service," (Compl., ECF No. 1, PageID.4–5).

Several weeks later, on January 23, 2022, Becks conducted a shake down of Plaintiff's cell. During the shakedown Becks stood on Plaintiff's footlocker, damaging it, and also damaging Plaintiff's fan and his typewriter ribbon.

That very day Plaintiff filed a grievance against Becks claiming that the shakedown/property damage was retaliatory for Plaintiff's filing of the complaint with Internal Affairs. (ECF No. 1-5, PageID.27–30.) The grievance was denied at the first two levels.

Six days later, on January 29, 2022, Defendant Brager shook down Plaintiff's cell. In the process, Brager cracked the casing on Plaintiff's typewriter. The next day, Plaintiff filed a grievance against Brager claiming that Brager conducted the search at Beck's request and that Beck made the request in retaliation for Plaintiff's grievance against Beck regarding the January 23, 2021, shakedown. (ECF No. 1-7, PageID.38–44.) The grievance was denied at all three levels.

On March 10, 2022, another prisoner, Harris, informed Plaintiff that on January 23, 2022— the same day of the first purportedly retaliatory shakedown—Defendant Becks asked Harris if Harris knew someone who would assault Plaintiff. Harris responded no. Becks replied "I'll find somebody." (Compl., ECF No. 1, PageID.6.) That day, although it was several weeks after Becks' statement and there had been no incident suggesting any attempted assault, Plaintiff sent a written

communication to Defendant Schroeder letting her know that he did not feel safe. Schroeder did not respond. Plaintiff sent another copy of the communication on March 18, 2022, but again received no response from Schroeder.

Plaintiff contends that Defendant Becks violated Plaintiff's First Amendment rights by conducting a retaliatory cell search on March 23, 2022, and damaging Plaintiff's property. (Compl., ECF No. 1, PageID.7–8.) Plaintiff claims that Becks' actions caused Plaintiff mental anguish which violated Plaintiff's Eighth Amendment rights. (*Id.*, PageID.8.) Plaintiff seeks compensatory damages of $4,938.00 and punitive damages. (*Id.*, PageID.9.)

Plaintiff contends that Defendant Brager violated Plaintiff's First Amendment rights by conducting a retaliatory cell search on January 29, 2022, and damaging Plaintiff's typewriter casing. (*Id.*) Plaintiff seeks compensatory damages of $3,250.00 and punitive damages. (*Id.*, PageID.9–10.)

Finally, Plaintiff claims that Defendant Schroeder violated Plaintiff's Eighth Amendment rights when she failed to respond to Plaintiff's report of Becks' "failed threat." (*Id.*, PageID.8–9.) Plaintiff seeks compensatory damages of $3,000.00 and punitive damages. (*Id.*, PageID.10.)

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff claims that Defendants violated his First and Eighth Amendment rights.

### III. First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove

4

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that Becks, on January 23, 2022, retaliated against Plaintiff for filing a complaint with MDOC Internal Affairs by conducting a cell search and damaging property and by seeking out a prisoner who might assault Plaintiff. Plaintiff contends that Brager, on January 29, 2022, retaliated against Plaintiff for filing the complaint against Becks by conducting a cell search and damaging Plaintiff's property.

### A.  Defendant Becks

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's complaint about Becks filed with the MDOC Internal Affairs Department would certainly qualify as protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Normally, a single search of a cell "would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003). But, a cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or

destruction of materials. *See Bell*, 308 F.3d at 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Therefore, by damaging Plaintiff's property during a cell search, Becks arguably took adverse action against Plaintiff.

Plaintiff also contends that Becks' attempt to find a prisoner to assault Plaintiff should also be considered adverse action. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). But a vague threat might not suffice. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

6

If Becks had directly threatened Plaintiff with physical harm by way of a prisoner assault, that would clearly be adverse action. But Becks never made that threat. It may be implicit in his communication to prisoner Harris; but Becks did not communicate the threat to Plaintiff. By the time Plaintiff learned of it weeks later, nothing had happened. Even Plaintiff describes it as a "failed threat." (ECF No. 1, PageID.9.) Nonetheless, for purposes of this preliminary review, the Court will consider the "threat" to be adverse action.

Plaintiff's retaliation claim against Defendant Becks falls short on the third element: Plaintiff has not alleged any facts that support the inference that Becks adverse actions were motivated by Plaintiff's protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"

7

*Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). The Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances.[1] *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Plaintiff offers no facts regarding a retaliatory motive other than the temporal proximity between Becks' conduct and Plaintiff's complaint against Becks. Generally, such allegations are insufficient to state a retaliation claim. And particularly here, where the adverse actions are separated from the protected conduct by several weeks, temporal proximity alone is too slender a reed to support an inference of retaliatory motive. Therefore, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Becks.

### B. Defendant Brager

Plaintiff offers the same protected conduct to support his retaliation claim against Defendant Brager: "filing a complaint against Becks." (ECF No. 1, PageID.9.) And Plaintiff offers the same type of adverse action—a cell search with property damage—even though it was a separate incident a few days later. But, once again, Plaintiff offers no facts to support his

---

[1] Plaintiff's litigation history in the federal courts reveals that he is a prolific filer of grievances and complaints.

conclusory claim that Brager acted in retaliation for Plaintiff's Internal Affairs complaint against Becks. Plaintiff only notes that someone heard Becks tell Brager to conduct the cell search. There are no facts alleged regarding how Brager, in following that instruction, was retaliating. There is nothing in the complaint to suggest that Brager even knew about the Internal Affairs complaint. Thus, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Brager.

## IV. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

9

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff contends that Defendant Becks violated his Eighth Amendment rights by subjecting Plaintiff to mental abuse by his retaliatory actions. (ECF No. 1, PageID.8.) Plaintiff contends that Defendant Schroeder violated his Eighth Amendment rights by failing "to act to the threat of immi[n]ent danger to [his] well-being." (*Id*.)

### A.  Defendant Schroeder

Plaintiff avers that Defendant Schroeder failed "to act," but his factual allegations reveal only that he "never received a response." (ECF No. 1, PageID.6.) There are no allegations that Plaintiff suffered any physical injury by virtue of Defendant Schroeder's failure to respond to Plaintiff regarding his complaint about Becks. Plaintiff alleges only a threat of imminent danger— a threat that his complaint characterizes as a "failed threat"—a threat that has never resulted in any harm to Plaintiff other than the mental anguish he claims he suffered when he learned of the threat

weeks after it was communicated. The facts alleged by Plaintiff do not support an inference that he was under a substantial risk of serious harm when he wrote to Defendant Schroeder about Becks' January 23 statement. Moreover, the fact that the warden did not respond directly to Plaintiff about his complaint does not support an inference that Defendant Schroeder was aware of a substantial risk of serious harm to Plaintiff or that she disregarded such a risk. In short, Plaintiff's allegations fail to state an Eighth Amendment claim against Defendant Schroeder.

### B.     Defendant Becks

Plaintiff claims that Becks' question to prisoner Harris caused Plaintiff fear and mental anguish and, accordingly, violated Plaintiff's Eighth Amendment rights. Certainly if Becks had successfully solicited a prisoner to assault Plaintiff, the assault would be a violation of Plaintiff's Eighth Amendment rights. But the circumstances alleged by Plaintiff are not even close to that. Instead, Plaintiff alleges that Becks posed a question to another prisoner, a question that suggested that Becks intended to find a prisoner to assault Plaintiff. But Becks apparently failed because Plaintiff does not allege that he has been assaulted. Indeed, Plaintiff did not even learn of the question until weeks after it had been posed.

Becks' words with prisoner Harris do not rise to the level of a constitutional violation. "An inmate's rights must actually be denied and not threatened to be denied." *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996). "Fear from spoken words is not an infringement of a constitutional right." *Ellis v. Ficano*, No. 94-1039, 1995 WL 764127, at *14 (6th Cir. Dec. 27, 1995); *see also Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) ("Appellant claims that this 'threat' caused him to fear for his life in violation of his constitutional rights. Appellant's asserted fear from these spoken words, however, is not an actual infringement of a constitutional right, and thus, it is not actionable under section 1983."). Accordingly,

Plaintiff's allegations fail to state an Eighth Amendment claim against Becks relating to his January 23, 2022, discussion with prisoner Harris.[2]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:      July 27, 2022                       /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                United States District Judge

---

[2] Moreover, the PLRA may preclude Plaintiff's Eighth Amendment claims because while he alleges he suffered from an emotional injury, he alleges that he suffered neither a physical injury nor a commission of a sexual act. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).")